# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

UNITED STATES OF AMERICA                                                      PLAINTIFF

v.                                       Case No. 4:14-cr-00068-02 KGB

MICHAEL FRANCIS HEALD                                                         DEFENDANT

## ORDER

On October 31, 2016, after a lengthy trial, a jury found defendant Michael Francis Heald not guilty of all charges against him in this criminal action (Dkt. No. 154). Before the Court is Mr. Heald's petition for award of reasonable attorney's fees and other litigation expenses (Dkt. No. 160). This is a Hyde Amendment petition. *See* Hyde Amendment, Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519 (1997), *codified in a statutory note at* 18 U.S.C.A. § 3006A. The government filed a combined motion to dismiss and response in opposition to Mr. Heald's Hyde Amendment motion for attorney's fees and costs (Dkt. No. 192).

For the following reasons, the Court grants the government's motion to dismiss (Dkt. No. 192) and denies Mr. Heald's petition for attorney's fees and expenses (Dkt. No. 160). The Court also enters a contemporaneous Order denying Mr. Heald's latest motion for an extension of time (Dkt. No. 210).

### I.   Procedural History

Prior to trial, this Court issued rulings on a co-defendant's motion for bill of particulars (Dkt. No. 60); a co-defendant's sealed motion pertaining to the indictment (Dkt. No. 126); a co-defendant's oral motion to sever (Dkt. No. 132); and numerous pretrial matters (Dkt. No. 129). The Court studied carefully pretrial the indictment and allegations made by the government when making these rulings. This Court then presided over a 14 day trial (Dkt. Nos. 133-137, 140-46).

The parties presented testimony from numerous witnesses and introduced many exhibits for consideration (Dkt. Nos. 148-49). Jurors rendered acquittals as to co-defendants Mr. Heald and Bradley Stephen Paul on day 15 of the trial (Dkt. No. 147). The Court entered the judgment of acquittal on November 1, 2016 (Dkt. No. 154). Mr. Heald filed his petition on December 1, 2016 (Dkt. No. 160). With that petition, he submitted a number of exhibits for the Court's consideration.

In his initial brief in support of his petition, Mr. Heald asserted that he would file supplemental briefing in January 2017 (Dkt. No. 161, at 16). On September 11, 2017, the Court entered an Order allowing Mr. Heald until September 25, 2017, to file his supplemental briefing in support of his Hyde Amendment petition (Dkt. No. 201). In that Order, this Court granted leave for Mr. Heald "to file a single supplemental brief before the Court rules on his Hyde Amendment motion." (Dkt. No. 201, at 2). At that time, the Court also denied Mr. Heald's request for discovery from the government (Dkt. No. 201, at 3-4).

On September 19, 2017, Mr. Heald sought an additional, unlimited extension of time to file his supplemental briefing (Dkt. No. 202). On February 22, 2018, the Court ordered Mr. Heald to complete his filing in support of his Hyde Amendment petition by March 26, 2018 (Dkt. No. 209). In that Order, the Court denied Mr. Heald's request for an unlimited extension of time and instead imposed a deadline on Mr. Heald to file his supplemental briefing. The Court also informed Mr. Heald that no additional extensions would be granted, absent a showing of good cause (*Id.*).

On March 26, 2018, rather than comply with this Court's Order by filing his completed Hyde Amendment petition or seeking relief before the deadline, on the day of the deadline, Mr. Heald filed yet another request for an extension (Dkt. No. 210, ¶ 20). Specifically, Mr. Heald stated in pertinent part in that motion:

> I can now state that I will obtain the funds by the end of March and the work to complete my Hyde claim can begin. It will be a very difficult and intensive process to trace all of the evidence to show how the government obscured the evidence, confused the jury, and presented evidence the government knew was false and misleading. My lawyer and I will make every effort to complete that work and file my submission in sixty days from the current deadline of March 26 or by May 25, 2018.

(Dkt. No. 210, ¶ 20).

To the extent Mr. Heald suggests in his latest filing that he needs additional time to present additional evidence to the Court of "what the government knew and when it knew it, and what the government did with what it knew," Mr. Heald has had approximately 17 months to prepare and file his supplemental briefing, but he has failed to do so (Dkt. No. 210, at 3). He mounted a defense against the government's charges when his liberty was at stake. He filed a Hyde Amendment petition with supporting exhibits, acknowledging the 30-day controlling deadline for such a filing. He has had access to all of the trial transcript since approximately January 5, 2017 (Dkt. No. 189). Aside from filing substituted redacted exhibits in support of his Hyde Amendment petition on October 26, 2017 (Dkt. No. 208), Mr. Heald has submitted nothing further addressing the merits in support of his petition. Only in his most recent submission does he even suggest what he might include in a supplemental filing, and what he cites there is insufficient to meet his high burden for the reasons explained in this Order.

## II. Discussion

Mr. Heald moves for attorney's fees and costs under the Hyde Amendment, which provides that:

> [T]he court, in any criminal case (other than a case in which the defendant is represented by assigned counsel paid for by the public) . . . , may award to a prevailing party, other than the United States, a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust.

3

Hyde Amendment, § 617. Mr. Heald is not entitled to attorney's fees and litigation expenses simply because he prevailed at trial. *United States v. Valueland Auto Sales, Inc.*, No. 16-3984, 2017 WL 1531635, at *2 (6th Cir. Apr. 28, 2017) ("To qualify for attorney fees under the Hyde Amendment, it is not enough to show that the prosecution was unsuccessful.") (citation omitted). He "must do more than present evidence of [his] innocence[,]" as the "Hyde Amendment does not shift to the government the risk of not prevailing always associated with litigating matters of law and fact on which reasonable people can disagree before courts and juries." *Id.* at *4 (quoting *United States v. Skeddle*, 45 Fed. App'x 443, 446 (6th Cir. 2002)). "The intent of the Hyde Amendment is to deter prosecutorial misconduct, not prosecutorial mistake." *United States v. Monson*, 636 F.3d 435, 439 (8th Cir. 2011) (citing *United States v. Bowman,* 380 F.3d 387, 391 (8th Cir. 2004)), *reh'g denied en banc*, 636 F.3d 435 (8th Cir. 2011).

Mr. Heald's claims of financial hardship are not a sufficient basis on which this Court may award fees under the Hyde Amendment (Dkt. No. 210, ¶¶ 2-6).[1] This is a well-established principle of which Mr. Heald and his counsel are certainly aware. "Defendant an innocent man, faces financial hardship because of the Government's unsuccessful prosecution of him. Even the slightest empathy produces a sense of unfairness; but subjective fairness cannot guide the Court. This Court must remain anchored by the law as enacted by Congress. It is duty bound to follow

---

[1] In civil matters, there is no right to counsel. *See Roberts v. Johnson*, 569 Fed. App'x 475 (8th Cir. 2014) (per curiam) (citations omitted). Most courts consider a claim for attorney's fees under the Hyde Amendment as a civil matter. *See United States v. Braunstein*, 281 F.3d 982, 993 (9th Cir. 2002) (Hyde Amendment appeals are civil in nature); *In re 1997 Grand Jury*, 215 F.3d 430, 435 (4th Cir. 2000) (Hyde Amendment action to recover attorney's fees is civil in nature); *U.S. v. Truesdale*, 211 F.3d 898, 903 (5th Cir. 2000) (Hyde Amendment motion similar to a motion for fees under the civil Equal Access to Justice Act); *but see In re Special Grand Jury 89-2*, 450 F.3d 1159, 1168 (10th Cir. 2006) (Hyde Amendment petitions are a criminal matter).

that law even if the consequences are harsh." *United States v. Shelnutt*, Case No. 4:09-cr-00014 (CDL), 2010 WL 1223943, at *1 (M.D. Ga. Mar. 19, 2010).

As to the merits of his claim, Mr. Heald argues that the government's prosecution was vexatious, frivolous, and in bad faith (Dkt. No. 160, ¶¶ 4-6). This is the narrow exception to the principle that "except in a rare case of prosecutorial misconduct, a citizen must bear the legal cost of an acquittal." *Shelnutt*, 2010 WL 1223943, at *1. "Because the text of the Hyde Amendment uses the terms 'vexatious,' 'frivolous,' and 'in bad faith' disjunctively, courts have recognized that each term has an independent meaning and that proof of any of the terms may entitle a prevailing defendant to an award pursuant to the Hyde Amendment." *Monson*, 636 F.3d at 438-39 (citing *United States v. Porchay*, 533 F.3d 704, 711 (8th Cir. 2008)). Therefore, the Court will address each argument in turn.

### A. Vexatious

Mr. Heald argues that the government's prosecution was vexatious because the government's case against him was "objectively deficient" and "lacked legal merit and factual foundation" (Dkt. No. 160, ¶ 4). He does not explain how the government's position "lacked legal merit and factual foundation" beyond this conclusory assertion.

"Circuit courts construing the Hyde Amendment have varied in interpreting the term 'vexatious.'" *United States v. Knott*, 256 F.3d 20, 29 (1st Cir. 2001), *reh'g denied en banc*, 256 F.3d 20 (1st Cir. 2001). The Eleventh Circuit Court of Appeals defines "vexatious" for the purposes of the Hyde Amendment as "'without reasonable or probable cause or excuse.'" *Id.* (quoting *United States v. Gilbert,* 198 F.3d 1293, 1298-99 (11th Cir. 1999)). On at least two occasions, the Eighth Circuit Court of Appeals has relied on the definition of vexatious used by the Eleventh Circuit. *See Porchay*, 533 F.3d at 711 (quoting *Gilbert,* 198 F.3d at 1299); *Monson*,

636 F.3d at 439 (quoting *Porchay*, 533 F.3d at 711). Other circuit courts, including the First Circuit Court of Appeals and the Ninth Circuit Court of Appeals, "hold that a determination that a prosecution was 'vexatious' for the purposes of the Hyde Amendment requires both a showing that the criminal case was objectively deficient, in that it lacked either legal merit or factual foundation, and a showing that the government's conduct, when viewed objectively, manifests maliciousness or an intent to harass or annoy." *Knott*, 256 F.3d at 29 (quoting *United States v. Sherburne*, 249 F.3d 1121, 1126-27 (9th Cir. 2001)). On at least one occasion, the Eighth Circuit has applied the definition of vexatious used by the First and Ninth Circuit Courts of Appeal. *Bowman*, 380 F.3d at 390-91 (citing *Knott*, 256 F.3d at 29-30; *Sherburne*, 249 F.3d at 1126); *see United States v. Oz*, No. CR13002732SRNFLN, 2017 WL 3531521, at *7 (D. Minn. Aug. 17, 2017) (citing *Bowman*, 380 F.3d at 390-91).

Mr. Heald argues that his prosecution was not based on any credible legal or factual foundation (Dkt. No. 210, ¶ 7), but his argument fails even under the less stringent definition of vexatious articulated by the Eleventh Circuit. At the close of the government's case and again at the close of all evidence, Mr. Heald moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, which provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). The Court denied both of Mr. Heald's motions, finding that there was sufficient evidence to support convictions on all pending counts (Dkt. Nos. 186, at 164; 189, at 86). By this Order, the Court reaffirms its earlier rulings. After hearing all of the evidence presented, the Court concludes that the government's prosecution was not vexatious. *See United States v. Steele*, 215 F.3d 1323 (4th Cir. 2000) (per curiam) (finding that the government's case

was not "factually weak" where the district court denied the defendant's motion for judgment of acquittal at the close of the government's case).

### B. Frivolous

Mr. Heald argues that the government's prosecution was frivolous "because it had no valid foundation in law or fact" as it "was based entirely on characterizations of events and transactions that the government knew to be groundless" (Dkt. No. 160, ¶ 5). "A prosecution is frivolous if it is 'utterly without foundation in law or fact.'" *Monson*, 636 F.3d at 440 (quoting *Porchay*, 533 F.3d at 711). Determining whether the government's case was frivolous "requires a consideration of the legal merit to a prosecution." *Id.* (citing *Black's Law Dictionary* (9th ed. 2009) (defining "frivolous" as "lacking a legal basis or legal merit")).

After hearing all of the evidence presented at trial, and after examining all materials submitted in support of his Hyde Amendment petition, the Court concludes that Mr. Heald does not have a valid argument to support his contention that the government's prosecution was frivolous. The Court reaffirms its previous determination that the government had probable cause to proceed against Mr. Heald, meaning its prosecution was not frivolous. *Porchay*, 533 F.3d at 711 ("Once probable cause to proceed against Porchay was established the district court need not have proceeded further to address Porchay's frivolous or vexatious prosecution claims."); *Gilbert* 198 F.3d at 1304 ("Once a district court judge accepts the government's legal position it will be extremely difficult to persuade us that the issue was not debatable among reasonable lawyers and jurists, i.e., that it was frivolous."). Since the government had probable cause to prosecute Mr. Heald, the prosecution was not "frivolous" and Mr. Heald's petition for fees under the Hyde Amendment must fail.

### C. Bad Faith

The majority of Mr. Heald's petition is predicated on his argument that the government conducted its prosecution in bad faith. For the purposes of a Hyde Amendment petition, "'bad faith' 'is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will.'" *Gilbert*, 198 F.3d at 1299 (quoting *Black's Law Dictionary* 139 (6th ed. 1990)); *but see Monson*, 636 F.3d at 444 (Riley, C.J., dissenting) ("[I]t appears the district court was under the misapprehension that 'conscious dishonesty' is necessary to recover under the 'bad faith' prong of the Hyde Amendment . . . . Although 'conscious dishonesty' qualifies as 'bad faith,' 'bad faith' does not require a showing of 'conscious dishonesty.'" (citing *ReliaStar Life Ins. Co. v. IOA Re, Inc.,* 303 F.3d 874, 882 (8th Cir. 2002)). As more than one court has explained, to demonstrate bad faith, Mr. Heald has the burden of proving by a preponderance of the evidence that "the Government 'had a *subjective* dishonest purpose or moral obliquity.'" *Oz*, 2017 WL 3531521, at *7 (emphasis added) (quoting *United States v. Manfredi*, No. CIV. S 06-416 FCD, 2008 WL 686859, at *10 (E.D. Cal. Mar. 11, 2008)).

In addition to having the burden of showing that the government acted with a subjective dishonest purpose or moral obliquity, Mr. Heald has the burden of showing that the government's prosecution was objectively unreasonable. *See United States v. Shaygan*, 652 F.3d 1297, 1314 (11th Cir. 2011) ("[T]he Hyde Amendment provides an objective standard for bad faith."); *United States v. Manzo,* 712 F.3d 805, 813 (3d Cir. 2013) ("As already noted, 'Congress created an objective standard of bad faith to govern an award of attorney's fees and costs under the Hyde Amendment.'" (quoting *Shaygan,* 652 F.3d at 1313)); *United States v. Isaiah*, 434 F.3d 513, 519 (6th Cir. 2006) (concluding that it was "unnecessary to consider whether the government

8

prosecuted [the defendant] to harass her" after finding that "the district court did not abuse its discretion in determining that [the defendant] has not demonstrated that the government's position was without probable cause."). For the purposes of the Hyde Amendment, "[s]ubjective ill-will is relevant, but not sufficient for a finding of bad faith." *Shaygan,* 652 F.3d at 1316. "The starting point for a potential award of attorney's fees and costs under the Hyde Amendment is an objectively wrongful prosecution: that is, a prosecution that either is baseless or exceeds constitutional constraints." *Id.* at 1317.

For the reasons previously stated in this Order, the Court finds that the government's prosecution of Mr. Heald was not baseless or otherwise objectively unreasonable. Therefore, the Court finds that the government's prosecution of Mr. Heald was not in bad faith. *See id.* ("If the prosecution is objectively reasonable, . . . then a district court has no discretion to award a prevailing defendant attorney's fees and costs under the Hyde Amendment."). Moreover, after presiding over Mr. Heald's trial and after reviewing the arguments and exhibits submitted by Mr. Heald in support of his Hyde Amendment petition, the Court categorically rejects Mr. Heald's argument that the government acted with any dishonest purpose or moral obliquity. The crux of Mr. Heald's bad faith argument is that he and his counsel provided the government "with virtually unprecedented amounts of evidence and rational explanation that would dissuade any reasonably objective prosecutor from pursuing the charges against [Mr.] Heald" (Dkt. Nos. 160, ¶ 7; 210, ¶ 8). He contends that the government acted in bad faith because "the government deliberately ignored the wealth of evidence presented to them, and took affirmative action to mislead the Court and the jury and to misrepresent key matters in this case" (Dkt. No. 161, at 3).

The exhibits submitted in support of Mr. Heald's petition contradict his argument. These exhibits demonstrate that, over the course of years, the government did not dismiss Mr. Heald out

9

of hand or ignore the materials submitted by his counsel, as Mr. Heald argues now. The exhibits show quite the opposite: the government reviewed and responded to the materials submitted by Mr. Heald's counsel and met with Mr. Heald and his counsel on multiple occasions (Dkt. Nos. 162-2; 163-1; 163-2; 163-4; 163-5; 164-1; 164-2; 164-3; 164-4; 164-9; 164-11; 164-13; 164-14). The government ultimately disagreed with Mr. Heald and his counsel (Dkt. Nos. 164-13; 210, ¶ 9). That honest disagreement does not amount to bad faith. *See United States v. Tucor Int'l, Inc.*, 238 F.3d 1171, 1178 (9th Cir. 2001) ("The district court stated that it had already found, in *Tucor I,* that 'the government honestly believed at the plea hearing that the conduct in the Indictment was prohibited by law and did not fall within the immunity clauses of the Shipping Act.' That factual finding negates bad faith."); *Isaiah*, 434 F.3d at 520 (affirming the denial of a Hyde Amendment petition and noting that "the government was not required to credit Isaiah's denial, and the government was under no duty to accept her assistance with the investigation"); *United States v. Velardi¸* No. 2:06-cr-00659-2, 2008 WL 3562459, at *3 (E.D. Penn. Aug. 14, 2008) ("A decision to prosecute based on the government's disbelief of a defendant's exculpatory statement is not malicious.") (citing *Isaiah*, 434 F.3d at 520).

This was a multi-count indictment. The government agreed to the Court's dismissing Count 5 of the indictment before the case went to the jury (Dkt. No. 210, ¶ 14). The Court instructed the jury that it was to consider three crimes with which Mr. Heald was charged: (1) conspiracy to violate one or more of five federal laws involving Onebanc; (2) aiding and abetting the causing of the making of a false entry in a report by Onebanc by submitting the quarterly Call Report to the Federal Deposit Insurance Corporation for the quarter ending September 30, 2008, by changing the maturity date on the line of credit of Alberto Solaroli from 4/10/08 to 7/10/08

10

thereby hiding the past due status of the $1,500,000.00 line of credit to Alberto Solaroli; and (3) conspiracy to conduct an illegal financial transaction (Dkt. No. 150).

To argue bad faith, Mr. Heald singles out the Solaroli loan situation and loss amount (Dkt. No. 210, ¶ 10-13), but the government is correct on this point. A prosecution for bank fraud conspiracy does not require the government to prove that a defendant caused the bank to suffer a loss as a result of his alleged fraud. *United States v. Ponec*, 163 F.3d 486 (8th Cir. 1998) ("We hold, among other things, that the crime of bank fraud under 18 U.S.C. § 1344 does not require a showing that the defrauded bank suffered a financial loss."); *United States v. Mason*, 902 F.2d 1434, 1442 (9th Cir. 1990) (examining the proof required to establish bank fraud), *overruled in part on other grounds*, 548 U.S. 1 (2006). The government's decision to proceed forward with this prosecution, despite the issues surrounding the loss amount, was not bad faith.

Mr. Heald also singles out others he claims "in the bank who conspired and committed bank fraud" but never went to trial (Dkt. No. 210, ¶ 17). Mr. Heald is correct that the Chairman of the Bank's untimely death prevented his prosecution. Further, he is correct that the government moved to dismiss charges against the former Chief Financial Officer, Tom Whitehead, who then testified as a witness at trial (Dkt. No. 66). Based on the docket, Mr. Whitehead was the first to cooperate. There is no *per se* rule against encouraging guilty pleas. *Corbitt v. New Jersey*, 439 U.S. 212, 218-19 (1978); *Bordenkircher v. Hayes*, 434 U.S. 357, 364-65 (1978). In the sentencing context, the Eighth Circuit Court of Appeals has held that defendants who accept responsibility or provide substantial assistance are not similarly situated to defendants who do neither. *United States v. Sandoval-Sianuqui*, 632 F.3d 438, 444 (8th Cir. 2011) (examining disparity in sentencing based on acceptance of responsibility); *United States v. Gallegos*, 480 F.3d 856, 859 (8th Cir. 2007) (examining disparity in sentencing based on providing substantial assistance). Mr.

Whitehead and Mr. Heald were not similarly situated in this litigation and comparisons between the two are flawed. Mr. Whitehead agreed first to accept responsibility and cooperate with the prosecution; Mr. Heald never did. Mr. Heald has not articulated anything, and the Court is not aware of anything, about this situation that supports a claim the government proceeded in bad faith with his prosecution.

In an effort to establish bad faith, Mr. Heald challenges which witnesses the government called and in what order those witnesses were called to testify at trial. On the record before this Court, his argument on this point does not support his Hyde Amendment petition. "The Hyde Amendment does not impose on prosecutors a duty, once they have identified evidence sufficient to bring a prosecution to cull the field for witnesses who might testify *on behalf* of the defendant." *United States v. Schneider*, 395 F.3d 78, 89 (2d Cir. 2005) (emphasis in original). This Court acknowledges the trial process is fluid and implicates judgment, strategy, and prosecutorial discretion. "[T]he test for awarding fees under the Hyde Amendment should not be an exercise in 20/20 hindsight . . . ." *Schneider*, 395 F.3d at 87-88 (citing and quoting *Sherburne*, 249 F.3d at 1127). Questioning discretionary calls after the fact of an acquittal does not support a finding of "affirmative prosecutorial misconduct" on this record as required to support a Hyde Amendment award. *Id*. at 87-88.

Mr. Heald also complains of not testifying before the Grand Jury. He has no right to testify before the Grand Jury (Dkt. No. 210, ¶ 15), and his not doing so does not constitute bad faith on the part of the government within the meaning of the Hyde Amendment. Again, the law on this point is well-settled, and Mr. Heald and his counsel should be well aware of it. The Eighth Circuit has held that:

> The government is not obligated to present exculpatory evidence in grand jury proceedings, however, since "the grand jury sits not to determine guilt or innocence,

but to assess whether there is an adequate basis for bringing a criminal charge," an under taking for which it has always been thought sufficient to hear only the prosecutor's side.

*United States v. Darden*, 688 F.3d 382, 387 (8th Cir. 2012) (citing and quoting *United States v. Williams*, 504 U.S. 36, 51 (1992)).

Mr. Heald repeatedly characterizes the prosecutors' actions as "unwarranted," "a personal vendetta," and "pursuit of [him]" (Dkt. No. 210, ¶¶ 13, 16, 21); he describes their actions as "manipulat[ing] the facts," "knowingly misle[ading] the Court numerous times," and "use of fear tactics, coercion, witness tampering, and other miscellaneous 'dirty tricks'" (Dkt. No. 210, ¶¶ 15, 14, 18). Based upon the Court's presiding over this litigation and trial, and its review of all record materials Mr. Heald presents, the Court concludes that there is no legal basis for Mr. Heald's Hyde Amendment petition. Repeating this type of inflammatory language does not make it true or make Mr. Heald's arguments sufficient or correct under the law.

### III. Special Circumstances

The government asserts that, even if Mr. Heald could meet the high burden to justify an award under the Hyde Amendment, which he cannot, he also is required to show that there are no special circumstances making an award unjust. *See Bowman*, 380 F.3d at 390; *see also Truesdale*, 211 F.3d at 908. "Special circumstances" that render an award of attorney's fees unjust include instances where the government advances in good faith novel but credible extensions of precedent on unsettled issues; where the government advances cases based on issues of first impression; and where the conduct of an attorney or applicant renders a fee award unjust. *See Dubose v. Pierce*, 579 F. Supp. 937, 951-52 (D. Conn. 1984) (holding that conduct of plaintiff's attorney constituted special circumstances), *rev'd on other grounds* 761 F.2d 913 (2d Cir. 1985), *vacated on other grounds* 487 U.S. 1229 (1998), *on remand* 857 F.2d 889 (2d Cir. 1988), *cert. denied* 490 U.S. 1007

13

(1989); *Midwest Research Inst. v. U.S.*, 554 F. Supp. 1379, 1391-92 (W.D. Mo. 1983) (denying fees where case raised issues of first impression), *aff'd* 744 F.2d 635 (8th Cir. 1984); *Donovan v. Miller Prop.*, 547 F. Supp. 785, 790 (M.D. La. 1982) (denying fees where case was premised upon a novel extension of law), *aff'd* 711 F.2d 49 (5th Cir. 1983); *see generally* Ralph V. Seep, Annotation, *What constitutes "special circumstances" precluding award of attorneys' fees under Equal Access to Justice Act*, 106 A.L.R. Fed. 191 (2010) (discussing fee awards under 28 U.S.C. § 2412, which allows fee awards to prevailing parties where, among other things, no "special circumstances" exist). The use of "unless" in the Hyde Amendment "indicates that the special-circumstances inquiry becomes relevant only where a prevailing party has successfully demonstrated that the position of the United States was vexatious, frivolous[,] or in bad faith." *U.S. v. Guron*, No. 1:08-cr-119-01, 2010 WL 2232269, at *7 (W.D. Mich. June 3, 2010) (citing *Gilbert*, 198 F.3d at 1302) (noting that defense counsel's own actions during pretrial and trial could render an award of fees from the government unjust).

The government relies on Mr. Heald's recanted testimony regarding Joint Defense Exhibit 7 about the information presented to the Board of Directors of Onebanc (Dkt. No. 211, at 7-8) and Mr. Heald's "equally cavalier" testimony about circumstances when he left his job at Onebanc (Dkt. No. 211, at 8-9) to argue that special circumstances exist making any award of attorneys' fees unjust. Mr. Heald has presented no argument that such special circumstances do not exist, even though he bears the burden to show that no such circumstances exist. *See Bowman*, 380 F.3d at 391. Based upon the Court's presiding over this litigation and trial, the Court concludes that Mr. Heald does not meet the high burden of demonstrating that his prosecution was vexatious, frivolous, or in bad faith to justify an award under the Hyde Amendment on the record before it,

and the Court concludes that Mr. Heald has failed to meet his burden regarding special circumstances.

## IV. Conclusion

The Court grants the government's motion to dismiss (Dkt. No. 192) and denies Mr. Heald's petition for attorney's fees and expenses (Dkt. No. 160). By separate order, the Court denies Mr. Heald's request for an extension of time to submit supplemental briefing. The Court also denies as moot One Bank & Trust, N.A.'s motion to seal petition for attorney's fees and all exhibits thereto filed by Michael Heald and motion for protective order (Dkt. No. 173). By prior Order, this Court addressed the motion to seal (Dkt. No. 200), and the parties represented to the Court that they resolved this dispute without the need for hearing (Dkt. No. 208).

It is so ordered this the 8th day of May, 2018.

_Kristine G. Baker_
Kristine G. Baker
United States District Court Judge